## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| TEMPLE GUN CLUB, INC., JEFFREY HOWARD, JASON ARMSTRONG, and CLARK MIRACLE, | § § § § | |
| *Plaintiffs,* | § § | |
| | § | Civil Action No. _____ |
| *v.* | § § | |
| PAMELA BONDI, in her official capacity as Attorney General, DANIEL DRISCOLL, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, BRIAN GARNER, in his official capacity as Special Agent in Charge of the Dallas Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and MICHAEL WEDDEL, in his official capacity as Special Agent in Charge of the Houston Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives, | § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Temple Gun Club, Inc., Jeffrey Howard, Jason Armstrong, and Clark Miracle ("Plaintiffs") seek relief from this Court against Defendants Pamela Bondi (in her official capacity as Attorney General), Daniel Driscoll (in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE")), Brian Garner (in his official capacity as Special Agent in Charge of the Dallas Field Division of the BATFE) and Michael Weddel (in his official capacity as Special Agent in Charge of the Houston Field Division of the BATFE) (collectively, the "Defendants").

## EXECUTIVE SUMMARY

The greatest enduring stronghold of the American experiment is that the federal government is one of limited, enumerated powers. Any power that is not expressly delegated to the federal government is reserved to the states and the people. U.S. Const. Amend. X. "Congress has no power to enact a comprehensive criminal code." *United States v. Wilson*, 164 F.4th 380, 391 (5th Cir. 2026) (Willett, J., concurring). Thus, any power of Congress to criminalize a person's conduct must be grounded in another enumerated power. Most often, Congress claims to find that power rooted in the Interstate Commerce Clause. U.S. Const. art. I, § 8, cl. 3.

But the Commerce Clause does not grant federal jurisdiction over every item capable of being bought or sold. The Supreme Court has limited the Commerce Clause to regulating the channels and instrumentalities of interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16–17 (2005). The third category associated with the commerce power—the substantial effects test—arises from the Necessary and Proper Clause rather than the Commerce clause alone. *Id.* at 34 (Scalia, J., concurring); *United States v. Whaley*, 577 F.3d 254, 260 (5th Cir. 2009).

Congress implicitly relied on these commerce powers to prohibit persons from merely possessing machineguns manufactured after May 19, 1986,[1] regardless of whether the firearm has ever crossed state lines or entered a channel of interstate commerce. 18 U.S.C. § 922(o). The only justification for prohibiting post-1986 machineguns comes from debate on the House floor, where the sponsor stated "I do not know why anyone would object to the banning of machineguns." *United States v.*

---

[1]    18 U.S.C. § 922(o)(1) prohibits possessing all machineguns, but subsection (o)(2) exempts machineguns that were lawfully possessed on the date of enactment, May 19, 1986. Firearm Owners' Protection Act, Pub. L. No. 99-308, §§ 102(9), 110(c), 100 Stat. 449, 453, 461 (1986). In effect, this prohibits possessing a machinegun manufactured after May 19, 1986. For ease of reference, this complaint refers to these machineguns as "post-1986 machineguns."

*Lopez*, 2 F.3d 1342, 1356 (5th Cir. 1993), *aff'd*, 514 U.S. 549 (1995) (quoting 132 Cong. Rec. 7085 (1986) (statement from Rep. Hughes)).

The Temple Gun Club, along with its members, Jeffrey Howard, Jason Armstrong, and Clark Miracle, object to the banning of machineguns because it is outside the scope of Congress's limited, enumerated powers and it is an unnecessary, improper usurpation of power.

Although then-Judge Samuel Alito called § 922(o) "the closest extant relative of the statute struck down in *Lopez*." *United States v. Rybar*, 103 F.3d 273, 287 (3d Cir. 1996) (Alito, J., dissenting), Plaintiffs acknowledge that *United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (per curiam), forecloses their enumerated powers theory. However, at least six active judges on the Fifth Circuit have questioned whether the Commerce Clause authorizes 18 U.S.C. § 922's bans on merely possessing a firearm.[2] This case provides a proper vehicle for the en banc Fifth Circuit to revisit *Knutson* and its progeny.

## PARTIES

1.    Plaintiff Temple Gun Club, Inc. (TGC) is a Texas nonprofit corporation recognized under I.R.C. § 501(c)(4) and headquartered in Temple, Bell County, Texas.

2.    TGC has more than 1,000 members across the State of Texas, including several members in Tarrant County.

3.    TGC owns and maintains a shooting range located at 3924 438 Loop, Temple, TX 76501.

---

[2]    *See Wilson*, 164 F.4th at 394 (Willett, J., concurring) (questioning § 922(o)); *United States v. Bonner*, 159 F.4th 338, 340 (5th Cir. 2025) (Willett, J., concurring) (Judges Willett and Duncan questioning § 922(g)(1)); *United States v. Seekins*, 52 F.4th 988, 988 (5th Cir. 2022) (Ho, J., dissenting) (Judges Ho, Smith, and Engelhardt questioning § 922(g)(1)); *United States v. Kirk*, No. 94-50472, 1997 U.S. App. LEXIS 12670, at *26 (5th Cir. Feb. 3, 1997) (separate opinion of Jones, J.) (Judges Jones and Smith questioning § 922(o)).

4.      TGC does not accept applicants for membership who are prohibited from possessing firearms under federal or state law. All of TGC's current members are eligible to possess firearms under federal and state law.

5.      All club members can truthfully declare that they "are not prohibited by the provisions of 18 U.S.C. chapter 44; 26 U.S.C. chapter 53; or any other provision of state or local law" from receiving or possessing a firearm, as required to complete ATF Form 4 to receive a machinegun.

6.      If 18 U.S.C. § 922(o)'s prohibition on possessing a post-1986 machinegun is invalidated, all club members could truthfully declare that "the making and possession of the firearm described above would not constitute a violation of 18 U.S.C. chapter 44; 26 U.S.C., chapter 53; or any provisions of state or local law" as required to complete ATF Form 1 to manufacture a machinegun.

7.      Members of TGC desire to possess machineguns prohibited by 18 U.S.C. § 922(o).

8.      The membership of TGC includes members who possess firearms that do not presently meet the definition of a machinegun, 26 U.S.C. § 5845(b), but that could feasibly be converted into machineguns.

9.      Some TGC members own the Sons of Liberty AR-15, manufactured in San Antonio, TX. The Sons of Liberty AR-15 receiver is manufactured as a semiautomatic firearm, but has been manufactured with a slightly larger internal lower receiver trigger, safety control pocket, and with markings for automatic fire. Converting a Sons of Liberty AR-15 into a machinegun requires milling and adding full auto components that enable automatic fire.

10.      The membership of TGC also includes several gunsmiths, who currently possess the knowledge of how to convert standard firearms, such as the Sons of Liberty AR-15, into firearms meeting the definition of machineguns under 26 U.S.C. § 5845(b).

11.    The gunsmith members of TGC own the required milling equipment and are capable of converting non-machinegun firearms that they and other TGC members currently possess into machineguns and desire to do so.

12.    But for 18 U.S.C. § 922(o), TGC's gunsmith members would convert some of their existing firearms or other TCG members' firearms into machineguns.

13.    The gunsmith members of TGC are ready, willing, and able to teach other members of TGC how to convert their own non-machinegun firearms into machineguns.

14.    Plaintiff Jeffrey Howard is an individual residing in Belton, Texas.

15.    Mr. Howard is a veteran of the United States Army.

16.    He has received training on the proper use of firearms, including machineguns.

17.    Mr. Howard is a member of TGC and serves as its president.

18.    Mr. Howard has never been convicted or accused of any felony or violent offense, including domestic violence.

19.    Mr. Howard is not prohibited by federal, state, or local law from possessing a firearm.

20.    Mr. Howard legally possesses firearms that do not presently meet the definition of a machinegun, 26 U.S.C. § 5845(b), but that could feasibly be converted into machineguns.

21.    Mr. Howard has plans to learn how to convert his firearms into machineguns and has identified gunsmiths who will teach him how to convert his firearms into machineguns.

22.    But for 18 U.S.C. § 922(o), Mr. Howard would convert some of his existing firearms into machineguns.

23.    Mr. Howard desires to possess a post-1986 machinegun.

24. If 18 U.S.C. § 922(o) were invalidated, Mr. Howard would immediately convert one of his existing firearms into a machinegun or obtain a new post-1986 machinegun.

25. Plaintiff Jason Armstrong is an individual residing in Belton, Texas.

26. Mr. Armstrong is a member of TGC and serves on its board of directors.

27. Mr. Armstrong has never been convicted or accused of any felony or violent offense, including domestic violence.

28. Mr. Armstrong is not prohibited by federal, state, or local law from possessing a firearm.

29. Mr. Armstrong is a gunsmith.

30. Mr. Armstrong has a current Type 01 federal firearms license that authorizes him to engage in the business of dealing firearms, which includes gunsmithing. 18 U.S.C. § 921(a)(11)(B).

31. Mr. Armstrong currently possesses knowledge of how to convert a non-machinegun firearm into a machinegun, as that term is defined in 26 U.S.C. § 5845(b).

32. Mr. Armstrong legally possesses firearms that do not presently meet the definition of a machinegun, 26 U.S.C. § 5845(b), but that he has the knowledge and skill to convert into machinegun.

33. But for 18 U.S.C. § 922(o), Mr. Armstrong would convert some of his existing, personally owned firearms into machineguns.

34. Mr. Armstrong desires to possess a post-1986 machinegun.

35. If 18 U.S.C. § 922(o) were invalidated, Mr. Armstrong would immediately convert one of his existing, personally owned firearms into a machinegun or obtain a new post-1986 machinegun.

36. Plaintiff Clark Miracle is an individual residing in Fort Worth, Texas.

37. Mr. Miracle is a member of TGC.

38.     Mr. Miracle has never been convicted or accused of any felony or violent offense, including domestic violence.

39.     Mr. Miracle is not prohibited by federal, state, or local law from possessing a firearm.

40.     Mr. Miracle legally possesses firearms that are do not presently meet the definition of a machinegun, 26 U.S.C. § 5845(b), but that could feasibly be converted into machineguns.

41.     Mr. Miracle has plans to learn how to convert his firearms into machineguns and has identified gunsmiths who will teach him how to convert his firearms into machineguns.

42.     But for 18 U.S.C. § 922(o), Mr. Miracle would convert some of his existing firearms into machineguns.

43.     Mr. Miracle desires to possess a post-1986 machinegun.

44.     If 18 U.S.C. § 922(o) were invalidated, Mr. Miracle would immediately convert one of his existing firearms into a machinegun or obtain a new post-1986 machinegun.

45.     Defendant Pamela Bondi is the Attorney General of the United States and responsible for enforcing all federal criminal laws, including 18 U.S.C. § 922(o). She is sued in her official capacity.

46.     Defendant Daniel Driscoll is the Acting Director of the BATFE and responsible for enforcing federal criminal laws relating to firearms, including 18 U.S.C. § 922(o). He is sued in his official capacity.

47.     Defendant Brian Garner is the Special Agent in Charge of the Dallas Field Division of the BATFE and is responsible for enforcing federal criminal laws relating to firearms, including 18 U.S.C. § 922(o). He is sued in his official capacity.

48.     Defendant Michael Weddel is the Special Agent in Charge of the Houston Field Division of the BATFE and is responsible for enforcing federal criminal

laws relating to firearms, including 18 U.S.C. § 922(o). He is sued in his official capacity.

## JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the United States Constitution and 28 U.S.C. § 1346 because this suit constitutes a civil action against an executive department of the United States.

50.     This Court has the authority to grant declaratory relief under 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202.

51.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(e)(1)(C) because this is a suit brought against an officer or employee of the United States in their official capacity, at least one plaintiff resides in this district, and no real property is in controversy. Venue is proper in the Fort Worth Division pursuant to 28 U.S.C. § 124(a)(2).

## LEGAL BACKGROUND

52.     Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

53.     In 1934, Congress passed the first national firearm legislation, the National Firearms Act ("NFA"). 26 U.S.C. ch. 53. The NFA imposed a $200 tax on manufacturing or transferring a short-barreled shotgun, short-barreled rifle, machinegun, silencer, or destructive device. *Id.* §§ 5811, 5821, 5845. The NFA also regulates who may import, manufacture, deal, transfer, and receive covered firearms. *Id.* §§ 5802, 5812, 5822.

54.     The NFA does not have a distinct list of offenses that disqualify a person from owning a machinegun. Instead, the NFA directs the BATFE to deny applications to transfer a machinegun "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." *Id.* § 5812(a); 27 C.F.R. § 479.86 (same).

55.    In 1968, Congress passed the Gun Control Act "to provide for the better control of the interstate traffic in firearms." Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, 1213 (1968) (quoting the Act's long title).

56.    Part of the Gun Control Act of 1968 was codified at 18 U.S.C. § 922. *Id.* § 102, 82 Stat. 1216–21.

57.    Section 922 contains a list of offenses and characteristics that prohibit a person from possessing a firearm, including a machinegun. 18 U.S.C. § 922(g).

58.    The NFA incorporates the disqualifying offenses and characteristics in § 922(g) by prohibiting transfers of a machinegun to a person ineligible to possess a firearm. 26 U.S.C. § 5812(a); 27 C.F.R. § 479.86.

59.    In July 1979 and April 1980, Senate Committee on the Judiciary held oversight hearings on the Bureau of Alcohol, Tobacco and Firearms (BATF) (the predecessor to BATFE) in which the Committee heard testimony that "BATF has moved against honest citizens and criminals with equal vigor," under the Gun Control Act of 1968. S. Rep. No. 97-476 at 15 (1982).

60.    A 1982 Senate Judiciary Committee report found that "approximately 75 percent of BATF gun prosecutions were aimed at ordinary citizens who had neither criminal intent nor knowledge but were enticed by agents into unknowing technical violations." Report of the S. Subcomm. on the Constitution, 97th Cong., The Right to Keep and Bear Arms 23 (Comm. Print 1982).

61.    In response to these concerns that the Gun Control Act of 1968 was being used against "honest citizens," Congress passed the Firearm Owners' Protection Act (FOPA). Pub. L. No. 99-308, 100 Stat. 449 (1986).

62.    Congress expressed in its findings that FOPA "is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes." *Id.* § 1(b)(2).

63.     Most of FOPA's provisions expand gun rights. FOPA legalized interstate sales of long guns, allowed ammunition to be shipped via the U.S. Postal Service, removed record keeping requirements to sell non-armor piercing ammunition, and allowed firearms to be transported in a locked container through states where they would otherwise be illegal. FOPA §§ 102, 107.

64.     As Congress considered these expanded protections for firearms owners, Rep. William Hughes offered a floor amendment to prohibit transferring or possessing a machinegun, with exceptions for government agencies and for individuals to transfer or possess a machinegun that was manufactured before the provision took effect. 132 Cong. Rec. 7084–85 (1986).

65.     "There is no committee report, and sparse legislative history, concerning [§ 922(o)], as it was added on the House floor. The only apparent explanation for it is the statement of its sponsor, Representative Hughes, that 'I do not know why anyone would object to the banning of machine guns.'" *United States v. Lopez*, 2 F.3d 1342, 1356 (5th Cir. 1993) (quoting 132 Cong. Rec. 7085 (1986)).

66.     No further debate occurred in the House about the Hughes Amendment. *See* 132 Cong. Rec. 7084–86 (1986).

67.     The Hughes Amendment passed by voice vote, *id.* at 7086, and was codified at 18 U.S.C. § 922(o).

68.     The Hughes Amendment grandfathered in all machineguns lawfully possessed before the law took effect. 18 U.S.C. § 922(o)(2)(B). It also exempted firearms possessed by federal, state, and local governments regardless of their manufacture date. *Id.* § 922(o)(2)(A).

69.     Section 922(o) took effect on May 19, 1986. FOPA § 110(c), 100 Stat. 461; *see also* 27 C.F.R. § 479.105(a) (noting the May 19, 1986 cutoff).

70.     Thus, it is illegal for individuals to possess any machinegun manufactured after May 19, 1986.

71.    Knowing violations of § 922(o) are punishable by fines of up to $10,000 and imprisonment for up to ten years. 18 U.S.C. § 924(a)(2).

## FACTUAL BACKGROUND

72.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

73.    TGC was incorporated in 1963 to promote sportsmanship and safety in the use of firearms.

74.    Members of TGC desire to legally possess post-1986 machineguns for safe, personal use.

75.    Section 922(o) injures TGC's members because it prevents them from possessing machineguns. *Hollis v. Lynch*, 827 F.3d 436, 442 (5th Cir. 2016) (holding that "being barred from possessing a machinegun" is an Article III injury-in-fact).

76.    Bringing suit against the federal government to allow TCG's members to legally possess machineguns for safe, personal use is germane to TCG's purposes.

77.    In 2023, 451 people were charged with violations of § 922(o). Bureau of Justice Statistics, U.S. Dep't of Justice, Federal Criminal Case Processing Statistics (FCCPS) Data Tool, https://fccps.bjs.ojp.gov/home.html?dashboard=FJSP-CriminalCodeStats (last visited Feb. 19, 2026).

78.    The government has not disclaimed prosecution of the Plaintiffs under § 922(o).

79.    There exists a credible threat of prosecution under § 922(o) against TGC members.

80.    Mr. Howard is a combat veteran of the United States Army. He enlisted at a young age and served his country through twenty-six years of dedicated service, including numerous deployments and tours of duty. From 1997 to 2002, he held the distinction of being the Senior Enlisted Advisor to the Department of the Army

Inspector General. He retired in 2002 as a Seargeant Major of the United States Army.

81.    After retirement, Mr. Howard continued his service of his country through volunteerism, including volunteering as a Veterans' Service Officer for the American Legion, the co-director of elections of Bell County, Texas, and as the vice chair of the Temple Gun Club.

82.    Mr. Howard has never been accused of, charged with, indicted for, or convicted of any felony or violent offense, including domestic violence.

83.    As a former infantryman, Mr. Howard is a firearms enthusiast and possesses many firearms, including several rifles.

84.    Mr. Howard is aware that it is possible to convert one or more of his rifles into a machinegun.

85.    Mr. Howard is also aware of the process by which he could convert his rifles into machineguns. He is also aware that he can easily obtain detailed instructions to convert his rifles into machineguns by discussing the matter with one of the many gunsmiths in TGC.

86.    Mr. Howard desires to convert one of his personal firearms into a machinegun or otherwise obtain a post-1986 machinegun.

87.    Mr. Armstrong is a retired firefighter and paramedic.

88.    Mr. Armstrong is a gunsmith.

89.    Mr. Armstrong owns Hammer Down Sports Gunsmith Services.

90.    Mr. Armstrong is a current Type 01 Federal Firearms Licensee.

91.    Mr. Armstrong has never been accused of, charged with, indicted for, or convicted of any felony or violent offense, including domestic violence.

92.    As a gunsmith, Mr. Armstrong is a firearms enthusiast and possesses many firearms, including several rifles.

93.    Mr. Armstrong knows how to convert his rifles into machineguns.

94.    Mr. Armstrong is also willing to teach other members of TGC to how to convert their own rifles into machineguns.

95.    Mr. Armstrong desires to convert one of his personal firearms into a machinegun or otherwise obtain a machinegun.

96.    Mr. Miracle is a firearms enthusiast and possesses many firearms, including several rifles.

97.    Mr. Miracle has never been accused of, charged with, indicted for, or convicted of any felony or violent offense, including domestic violence.

98.    Mr. Miracle is aware that it is possible to convert one or more of his rifles into a machinegun.

99.    Mr. Miracle is also aware of the general process by which he could convert his rifles into machineguns. He is also aware that he can easily obtain detailed instructions to convert his rifles into machineguns by discussing the matter with one of the many gunsmiths in TGC.

100.    Mr. Miracle desires to convert one of his personal firearms into a machinegun, or otherwise obtain a post-1986 machinegun.

101.    It would be futile for Plaintiffs to file an ATF Form 1 (to make a machinegun) or an ATF Form 4 (to transfer a machinegun) for a post-1986 machinegun because statutes and BAFTE regulations require the agency to deny it. *See* 26 U.S.C. §§ 5812(a), 5822; 27 C.F.R. §§ 479.65, 479.86.

## COUNT I
### 18 U.S.C. § 922(o) EXCEEDS CONGRESS'S ENUMERATED POWERS
### (U.S. Const. art. I, § 8)

102.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

103.    "The Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549, 552 (1995).

104.    Any "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

105.    There are seventeen specific powers enumerated in Article I, Section 8 of the Constitution, along with the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8.

106.    The power to prohibit possessing a firearm is neither implicitly nor explicitly among the federal government's powers. *See id.*

107.    To the contrary, the drafters of the Constitution included a direct prohibition on "infring[ing]" upon "the right to keep and bear Arms." U.S. Const. amend. II.

108.    Indeed, "[t]he Constitution expressly delegates to Congress authority over only four specific crimes: counterfeiting securities and coin of the United States; piracies and felonies committed on the high seas; offenses against the law of nations; and treason." *Taylor v. United States*, 579 U.S. 301, 312 (2016) (Thomas, J., dissenting) (citations omitted).

109.    Section 922(o) does not fall within any of the crimes specified in *Taylor*. *Id.*

110.    "Congress has no power to enact a comprehensive criminal code." *United States v. Wilson*, 164 F.4th 380, 391 (5th Cir. 2026) (Willett, J., concurring).

111.    Therefore, § 922(o) must find its footing in one of Congress's other enumerated powers.

112.    Traditionally, § 922(o) has been justified under the Interstate Commerce Clause. *See United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (per curiam).

113.   The Commerce Clause grants Congress authority "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3.

114.   The Commerce Clause authorizes Congress to regulate the channels and instrumentalities of interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16–17 (2005).

115.   The third category associated with the commerce power—the substantial effects test—arises from the Necessary and Proper Clause rather than the Commerce clause alone. *Id.* at 34 (Scalia, J., concurring); *United States v. Whaley*, 577 F.3d 254, 260 (5th Cir. 2009); *Smith v. U.S. Dep't of the Treasury*, 761 F. Supp. 3d 952, 963 (E.D. Tex. 2025).

116.   But § 922(o) cannot be justified under the Commerce Clause, even when supplemented by the Necessary and Proper Clause.

117.   Prohibiting mere possession of machineguns does not regulate a channel or instrumentality of interstate commerce.

118.   Nor does mere possession of a machinegun per se substantially affect interstate commerce.

119.   Any invocation of the Necessary and Proper Clause's implied powers must be examined "carefully to avoid creating a general federal authority akin to the police power." *NFIB v. Sebelius*, 567 U.S. 519, 536 (2012). This includes determining whether the relationship to the enumerated power is too attenuated, or if invoking an enumerated power is merely a "pretext" to pass laws for other purposes. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 423 (1819). When a law exceeds those limits, courts have the "painful duty" of holding the law unconstitutional. *Id*.

120.   To meet its burden, the government must show that the regulation is both necessary—*i.e.*, "plainly adapted" to the regulation of interstate commerce—and proper—*i.e.*, consistent "with the letter and spirit of the constitution." *NFIB*, 567 U.S. at 537 (quoting *McCulloch*, 17 U.S. (4 Wheat.) at 421).

121.    A regulation is "plainly adapted" when there is "some obvious, simple, and direct relation between the statute and the enumerated power." *Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring) (citing 8 Writings of James Madison 448 (G. Hunt ed. 1908)).

122.    As Justice Scalia explained in *Raich*, the "plainly adapted" standard effectively tracks the evidence-based, federalism-sensitive form of rational basis applied in *Lopez* and *Morrison. See Gonzales v. Raich*, 545 U.S. 1, 35–36 (2005) (Scalia, concurring).

123.    *Morrison*'s evidence-based, federalism-sensitive inquiry weighs four considerations: (1) whether the activity is economic in nature; (2) whether the regulation has an interstate commerce jurisdictional element; (3) congressional findings on the effects the regulated activity has on interstate commerce; and (4) whether the link between intrastate activity is too attenuated to interstate commerce. *United States v. Morrison*, 529 U.S. 598, 609–12 (2000).

124.    Merely possessing a machinegun is not economic in nature. When considering whether an activity is economic, courts look "only to the expressly regulated activity" itself—*i.e.*, the activity that would trigger federal penalties. *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622, 634 (5th Cir. 2003).

125.    Here, the regulated activity is "to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). Transferring an item sometimes involves economic activity. *See GDF Realty*, 326 F.3d at 629 (describing "the exchange of goods and services" as economic activity). Not so for mere possession. Merely possessing an item is not "the exchange of goods and services," *id.*, nor is it "the production, distribution, and consumption of commodities." *Raich*, 545 U.S. at 25.

126.    The Supreme Court recognized this in *Lopez* when it held the ban on merely possessing a firearm in a school zone "is a criminal statute that by its terms

has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *United States v. Lopez*, 514 U.S. 549, 561 (1995).

127.    The same is true for merely possessing a machinegun. Judge Jones recognized this in *Kirk*, stating that "[p]rivate possession of a machinegun does not involve a market activity, and there is no legitimate market in which a substitution effect would occur." *United States v. Kirk*, No. 94-50472, 1997 U.S. App. LEXIS 12670, at *61 (5th Cir. Feb. 3, 1997) (separate opinion of Jones, J.).

128.    While the Supreme Court has allowed the government to aggregate economic activity to measure its substantial effect on commerce, it has never relied on aggregation of noneconomic activity. *GDF Realty*, 326 F.3d at 630 (quoting *Morrison*, 529 U.S. at 613).

129.    Section 922(o) also lacks an interstate commerce jurisdictional element. In *Lopez*, the Fifth Circuit came to the same conclusion. *United States v. Lopez*, 2 F.3d 1342, 1356 (5th Cir. 1993), *aff'd*, 514 U.S. 549 (1995).

130.    Although *Lopez* struck down the Gun Free School Zones Act, 18 U.S.C. § 922(q), the Fifth Circuit spent significant time drawing parallels to § 922(o). That court explained both sections 922(q) and 922(o) "denounce mere possession with no express tie either to interstate commerce or other federalizing element." *Id.*

131.    Congress knows how to insert an interstate commerce jurisdictional element into firearms regulations. Section 922 alone has 17 instances where Congress conditioned its regulation on some interstate or foreign commerce element. *See* 18 U.S.C. § 922(a)(1)(A), (a)(1)(B), (a)(2), (a)(4), (e), (f)(1), (f)(2), (g), (h)(1), (h)(2), (i), (j), (k), (n), (q)(2)(A), (q)(3), (u).

132.    Congress even knows how to tie mere possession to interstate commerce. Section 922(g)—which bans firearm and ammunition possession by a whole host of persons (felons, fugitives, unlawful drug users, illegal aliens, and the mentally ill)—specifically requires that such possession be "in or affecting commerce."

17

133.    That jurisdictional language is absent from § 922(o).

134.    Section 922(o) also lacks congressional findings that explain how possessing a machinegun substantially affects interstate commerce.

135.    The Fifth Circuit already found that "the overall structure and history, as well as the title, of the Firearms Owners' Protection Act suggest no Congressional determination that mere possession of ordinary firearms implicates interstate commerce or other federal concerns." *United States v. Lopez*, 2 F.3d 1342, 1355 (5th Cir. 1993), *aff'd*, 514 U.S. 549 (1995).

136.    As to the Act's overall purpose, Congress expressed in its findings that FOPA "is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes." FOPA § 1(b)(2).

137.    The Fifth Circuit could not identify any findings specific to § 922(o): "There is no committee report, and sparse legislative history, concerning this provision, as it was added on the House floor." *Lopez*, 2 F.3d at 1356.

138.    The only explanation for this provision came when its sponsor moved to waive reading of the amendment on the House floor, stating "I do not know why anyone would object to the banning of machineguns." 132 Cong. Rec. 7085 (1986).

139.    Any links between mere possession of a machinegun and interstate commerce is too attenuated. *See Morrison*, 529 U.S. at 612.

140.    Section 922(o) is also not a "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez*, 514 U.S. at 561.

141.    Machineguns are highly regulated at the federal level. The NFA provides a comprehensive registration and licensing scheme that tightly controls who may possess and transfer a machinegun. *See* 26 U.S.C. ch. 53.

142.    This case does not challenge the NFA. It only challenges Congress's extra step in § 922(o) to ban possessing machineguns manufactured after 1986.

143. Holding § 922(o) unconstitutional will not undercut the NFA's requirements. Plaintiffs will still have to comply with the NFA's extensive registration and taxing scheme for any post-1986 machineguns they wish to acquire.

144. There is simply no "obvious, simple, and direct relation between" possessing a machinegun and interstate commerce. *Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring). Any attempt to link mere possession to interstate commerce requires a chain of inferences that will ultimately lack a limiting principle. The Court rejected such an attenuated but-for causal chain in *Morrison*. 529 U.S. at 615. Lacking a limiting principle proved fatal in *Lopez* and *Morrison*, and it is fatal here. *See id.*; *Lopez*, 514 U.S. at 564–65.

145. At best, banning possessing machineguns impacts the availability of machineguns, which may have an effect on violent crime rates and narcotics trafficking, which in turn affects interstate commerce. *See United States v. Knutson*, 113 F.3d 27, 31 (5th Cir. 1997) (per curiam).

146. However, the argument that firearm possession affects violent crime rates, which in turn affects interstate commerce, was directly addressed and rejected by *United States v. Lopez*, 514 U.S. 549, 563–65 (1995).

147. *Knutson* held that Congress could prohibit machinegun possession because "the vast majority of machinegun possessions constitute the culminating step in interstate commercial transactions." 113 F.3d at 29.

148. But nearly every item bought or sold in the modern age is the culminating step of an interstate—and often global—supply chain.

149. Such an expansive reading of the commerce power fails to maintain the "distinction between what is truly national and what is truly local" that the Constitution requires. *Morrison*, 529 U.S. at 617–18.

150. *Knutson* was decided in 1997. This was after *Lopez* in 1995 but before *Morrison* in 2000.

151.    *Knutson* is difficult to reconcile with *Lopez*'s holding. After *Morrison*, it is clear that *Knutson* did not properly apply the four considerations necessary to satisfy the substantial effects test.

152.    Section 922(o) cannot be justified under the taxing power or any other enumerated power.

153.    Applying *Morrison*, 18 U.S.C. § 922(o) is therefore unlawful. *Knutson* bears reconsideration en banc.

## INJUNCTIVE RELIEF ALLEGATIONS

154.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

155.    Plaintiffs allege that both on its face and as applied, 18 U.S.C. § 922(o) exceeds Congress's enumerated powers, thereby violating Plaintiffs' constitutional rights.

156.    If an injunction does not issue enjoining Defendants from enforcing § 922(o), Plaintiffs will be irreparably harmed. *BST Holdings L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("the loss of constitutional freedoms for even minimal periods of time unquestionably constitutes irreparable injury" (cleaned up)).

157.    Plaintiffs have no plain, speedy, and adequate remedy at law to prevent the Defendants from enforcing § 922(o).

158.    If not enjoined by this Court, Defendants will continue to enforce § 922(o) in derogation of Plaintiffs' rights.

159.    The government is "not injured" when an unconstitutional law is enjoined. *Trans World Airlines v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990).

160.    And "the public interest of the nation is always served by the cessation of a program that was created in violation of law and whose existence violates the law." *Texas v. United States*, 50 F.4th 498, 530 (5th Cir. 2022).

### DECLARATORY RELIEF ALLEGATIONS

161.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

162.    An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether § 922(o) violates the United States Constitution.

163.    This case is presently justiciable because § 922(o) applies to Plaintiffs on its face. And Plaintiffs desire to possess and have concrete plans to possess post-1986 machineguns, but § 922(o) prevents them from doing so.

164.    Declaratory relief is therefore appropriate to resolve this controversy.

### PRAYER FOR RELIEF

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring 18 U.S.C. § 922(o) unconstitutional.

Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue permanent injunctions prohibiting Defendants from enforcing § 922(o) against Plaintiffs.

WHEREFORE, Plaintiff prays for judgment against Defendants and that the Court:

(1)    declare that 18 U.S.C. § 922(o) is unconstitutional on its face and as applied to Plaintiffs because it exceeds Congress's enumerated powers;

(2)    issue a permanent injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing 18 U.S.C. 922(o) against TGC and its members, including any corporations, limited liability companies, trusts, or other entities that TCG members own, control, or serve as officers, beneficiaries, or trustees;

21

(3)     award Plaintiffs their costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney fees pursuant to 28 U.S.C. § 2412; and

(4)     grant such other and further relief as the Court deems equitable, just, and proper.

Date: March 10, 2026                    Respectfully submitted,

*/s/ Eric Heigis*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
ERIC HEIGIS
VA Bar No. 98221
eheigis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:    (512) 472-2728